## CARPENTER STREET.

A posted notice of the time and place of meeting of viewers to assess damages, is sufficient notice to a non-resident.

Where lots are sold with the privilege of using a road, the owner of the fee in the road-bed has too remote an interest therein to be entitled to damages where a street is laid out over the road.

The first section of June 13, 1874, giving an appeal in assessments of damages, repeals section second, Act April 22, 1856.

Certiorari to Quarter Sessions of Northampton County. No. 416 January Term, 1884.

The facts of the case appear in the opinion of the Court below, which was delivered by

MEYERS, P. J.:

This is a proceeding under the first section of the Act of April 22, 1856, which provides for the appointment of seven disinterested freeholders to assess damages, if any, sustained by the owners of property for opening, widening, or extending any street or alley in an incorporated borough.

In the case before us, the authorities of the Borough of South Bethlehem widened Carpenter street by including within its limits a narrow street, called Osage street, running parallel to Carpenter street, and also a strip of land, two feet in width, lying between said street, belonging to M. L. Yost.

The effect of this was to make Carpenter street about 71 feet in width.

The viewers made report and awarded one hundred and fifty dollars damages to M. L. Yost. No damages were awarded to any other property holder or assessments for contribution made as provided by said statute. To this report M. L. Yost filed a number of exceptions.

It appears from the evidence that one Charles Hacker, prior to the 21st of November, 1864, was the owner of a strip of land, designated as Osage street, and other lands adjoining it, who, by deed of the last mentioned date and duly recorded, dedicated Osage street to the use of the public, and on the 20th of September, 1875, said street was, by resolution of Town Council, accepted and adopted as one of the streets of the Borough of South Bethlehem.

Subsequently, on the 28th of January, 1876, Charles Hacker and wife, for the consideration of one dollar, by deed, sold and conveyed said strip of land, included within the lines of Osage street, to M. L. Yost in fee simple.

In this deed, however, appears the following reservation, viz:

"Reserving, nevertheless, unto the said Charles Hacker, his heirs and assigns, and to the owners and occupants of other lots of land, claiming title to the use of said Osage street, through or under the said Charles Hacker or his grantees, the use and privilege of that one described and conveyed premises, (marked on the aforesaid plan as Osage street) in common with the said Martin L. Yost, his heirs and assigns."

The first exception in substance is, that in widening a street, the borough authorities have no power to throw two streets into one, and to include also an intervening narrow strip of land.

The Borough of South Bethlehem was incorporated under the general borough laws, and there is nothing in these statutes that prohibits it.

By the second section of the Act of April 3, 1851, P. L., 320, relating to the incorporation of boroughs, the corporate authorities have power:

"To survey, lay out, enact and ordain such roads, streets, lanes, alleys, courts and common sewers as they may deem

necessary, and to provide for, enact and ordain the *widening* and straightening of the same."

By plac. 24:

"To regulate the roads, streets, lanes, alleys, courts, common sewers, public squares, common grounds, footwalks, pavements, gutters, culverts and drains, and the heights, grades, *widths,* slopes and forms thereof; and they shall have all other needful jurisdiction over the same."

By the third section of said Act (Brightly, 171, pl. 67), they have power :

"To make a draft or plan of the roads, streets, lanes, alleys and courts opened or laid out, with every explanation necessary to a full understanding of the same, which draft or plan shall be kept by the clerk, and shall be open to public inspection, when required.".

Also:

"To give due and personal notice to all persons resident in the borough directly interested therein, of any proposition to fix or change the roads, streets, lanes, alleys or courts, or on the grading or *other regulation* thereof," etc..

In these sections there is no prohibition, either expressed or by clear implication, to widen the street the way in which this was done.

It is, however, claimed that the effect of including Osage street within the limits of Carpenter street, is to vacate Osage street, and that this cannot be done under the 22nd section of the Act of June 13, 1836, P. L., 558, which provides,

"That nothing in this Act shall be construed to give authority to any of the Courts of this Commonwealth to vacate any lane, street or highway within any city, *borough,* town-plot, or any town or village laid out by the late proprietaries or by any person, and dedicated to the public use," etc.

This was changed by the Act of April, 15, 1845, relative to the vacating of a street or alley of an unincorporated village.

The answer to this is, that the foregoing provision of the statute applies to the proceeding to vacate a road, in the Court

of Quarter Sessions, and not under the general power of municipal corporations.

Even if there were statutory provisions prohibiting municipal authorities to vacate Osage street, adopted by the borough as a public street, on the ground that it was originally dedicated by some person to public use, the use of the exceptant's proposition is that the mere widening of Carpenter street by extending it over Osage street is not a vacating of the latter street. But that the borough authorities have the right to vacate such a street, is expressly decided; In re vacating Osage street, 9 N., 114.

In connection with the first exception it may be well to consider the 8th exception, which raises the question whether a borough has authority to widen a street to the width of 72 feet.

I have already referred to the general borough laws, under which the borough authorities have full power and control over its streets, lanes and alleys, in respect to widening the same, etc., and in them there is no provision limiting the width of a street, lane or alley in a borough.

By the general road law, relating to township roads, the width of such roads shall not exceed 50 feet.

That the power conferred upon municipal authorities to lay out streets, widen the same, etc., to a further width may be abused, but the remedy in such a case is provided for by the 27th section of the Act of April 3, 1851.

"Upon the complaint of any person or persons, aggrieved by any regulation under the provisions of this Act, in relation to the laying out, widening and straightening the roads, streets, lanes, alleys, courts and common sewers, or of the opening, grading or other regulations thereof, the Court shall take such order as may be just and reasonable, and the final order of the said Court shall be conclusive."

Whatever merit there may be in these exceptions, it is clear that the questions raised by them cannot be determined under exceptions to a report of viewers assessing damages.

These exceptions are not sustained.

There is nothing in the second exception, alleging that

3 Wa 19

Osage street is not one of the streets of the Borough of South Bethlehem, but is the private property of M. L. Yost, that, affects the legality or regularity of this proceeding.

This exception is not sustained.

The third exception raises the question as to the effect of this proceeding, in consequence of an agreement in writing and under seal, alleged to have been entered into on the 24th of October, 1882, between M. L. Yost and the Borough of South Bethlehem, per J. D. Broadhead, Esq., its attorney.

By this agreement M. L. Yost agreed, for the consideration of one dollar then in hand paid, and for the payment of the further sum of $300, to sell and convey by deed in fee simple, on or before the 1st of November, 1882, or soon thereafter to the Borough of South Bethlehem,

"That certain tract of land, known as 'Yost's two feet,' lying and being in said borough, and between Carpenter street and Osage street;" "and for the further consideration that the said M. L. Yost agrees to relinquish, remise, discharge and forever quit claim to that certain piece of land in said borough, known as Osage street, excepting twelve feet lying immediately in front of his property on said street, and that the said Yost will not build upon the said twelve feet, but will keep within or on the building line now established upon said street; and that the said Yost agrees to execute such further assurances of such lands as may be requisite, and thereupon the said parties bound themselves, their heirs, executors, administrators, and successors, for the performance of all and every of the above agreement."

It does not appear in evidence that J. D. Brodhead, as attorney of the borough, had any authority from said borough to enter into such an agreement with M. L. Yost.

This agreement was, however, laid before the Town Council, and a resolution offered that Dr. Yost's proposition be accepted.

To this an amendment was offered, "that the whole matter be laid over until all the property owners on Osage street sign a release similar to the one submitted by Dr. Yost."

To this an amendment was offered, which was lost.

The Town Council then passed the following resolution:

"*Resolved*, That Council accept the proposition of Dr. Yost, providing that all the property holders on Osage street sign an agreement, containing all the conditions contained in Dr. Yost's agreement, not to build at any time beyond the present building line on said Osage street."

At a subsequent meeting of Town Council, the Borough Solicitor presented and read an unsigned paper from Dr. M. L. Yost and wife, proposing to deed to the Borough of South Bethlehem a strip of land, lying between Osage and Carpenter streets, for the sum of $300.

A resolution was then adopted,

"That a voucher be drawn for $300, in favor of the Finance Committee and the Chief Burgess, to be paid over to Dr. Yost for said strip of land, provided that Yost enter into an agreement with the borough to maintain the present building line on Osage and Carpenter streets, and to clear such building lines by January 1, 1883, or that portion of the market house, which now stands and projects over the building line at Carpenter and Osage streets, and also that the finance committee make the necessary search as to the title of said ground."

At a subsequent meeting of Town Council, Mr. Ritter, of the Finance Committee, reported,

"That Dr. Yost had refused to agree to clear the present building line on Osage and Carpenter streets from obstructions now projecting thereon, by the old market house, and that the $300 were, in consequence, not paid over to the said Yost."

The following resolution was then passed:

"*Resolved*, Street Committee be instructed to take legal advice in the matter of Osage and Carpenter streets, in reference to widening Carpenter street, and on the strip of ground alleged to be between them, and that the Street Committee report to Council at special meeting to be called at their request."

Assuming that there was in fact an agreement between Yost and the borough, for the sale and conveyance by the former to the latter, for the consideration of $300, the contention on behalf of the exceptant that the borough authorities are

estopped from proceeding to assess damages sustained by Yost for widening Carpenter street, or the fact that the borough had agreed to pay $300 to Yost, was an element which the viewers were bound to consider in assessing damages, is not tenable.

The agreement of Yost was to sell his right, title and interest in the strip of land between Osage and Carpenter streets, to the Borough of South Bethlehem for $300.

If the borough failed to comply with the contract, the remedy of Yost was to go into a Court of Equity, and ask for a specific performance of the contract. But this question cannot be raised in this proceeding, which is simply to assess damages sustained by Yost for the use of the surface of the land for a public highway. The title to the land is still in him, and there is probably nothing to prevent him now to proceed in a Court of Equity, if he is satisfied that he has a binding agreement with the borough. But the fact is, he has no such binding agreement whatever.

Brodhead had no authority to make such an agreement with Yost, and the borough authorities had a right to accept or reject it, or require other conditions on the part of Yost to be added to it, and that Yost should perform certain acts before they accepted the proposition. This the Town Council did, and as Yost refused to comply with the action of Council the agreement made by Yost with J. D. Brodhead, on behalf of the borough, had no more legal effect than a piece of blank paper.

. This exception is not sustained.

The fourth exception relates to the rights of others, owners of land along said disputed territory, not passed upon by the viewers.

These parties, if there are any, have filed no exceptions, and their rights, if they have been invaded, cannot be considered and determined on an exception filed by M. L. Yost.

This exception is not sustained.

The sixth exception is that the viewers are not freeholders as required by law, that one of the viewers knew nothing of

the value of the land taken; that he refused to go with the view, but was coerced by the others to join in the report.

As there is no testimony sustaining the matters alleged in the exception, it is not sustained.

The seventh exception is that the damages allowed to M. L. Yost are inadequate.

The 1st section of the Act of June 13, 1874, P. L., 283, provides that:

"In all cases of damages assessed against any municipal or other corporation, or individual or individuals, invested with the privilege of taking private property for public use, for property taken, injured or destroyed by the construction or enlargement of their roads, highways or improvements, whether such assessments shall have been made by viewers, or otherwise than upon a trial in Court, and an appeal is not provided for or regulated by exsisting laws, an appeal may be taken by either party to the Court of Common Pleas of the proper county within thirty days from the ascertainment of the damages, or the filing the report thereof in Court, pursuant to any general or special Act, and not afterwards."

Prior to the passage of this statute, the Court, by the second section of the Act of April 22, 1856, P. L., 526, under which this proceeding was commenced, had power, under exceptions to report, to pass upon the question of damages. This section provides that:

"The said viewers shall make report of their proceedings in writing to the next session of said Court, describing the properties upon which assessments have been made, specifically stating whether for contribution or for damages, with the amounts respectively, and the said Court may, at the next session thereafter, or at any subsequent session, on the hearing of such parties as choose to contest the same, *modify*, approve and confirm the said report, which confirmation shall be final and conclusive upon all parties."

I have no doubt that the word "modify," used in said section, authorizes the Court to determine whether the damages are excessive or inadequate. The question, however, presents itself whether the remedy by appeal given by the Act of June

13, 1874, is cumulative to, or a substitution of the remedy given by the Act of 1856. We are of the opinion that it is a substitution. The word "may," in the phrase in the Act of 1856, viz: "An appeal *may* be taken by either party," must be construed as *shall*.

In Commonwealth vs. Gable, 7 S. & R., 424, it was held that under the eighth section of the Act of April 12, 1794, 2 Sm. L., 188, which provides that:

"Wheresoever any person shall be charged with involu-tary manslaughter, happening in consequence o° an unlawful act, it shall and may be lawful for the Attorney General, with the leave of the Court to waive the felony, and to proceed against, and charge such a person with a misdemeanor," and that the words, "it shall and may be lawful for the Attorney General, with the leave of the Court, to waive the felony," are imperative, and where the statute says he may waive the felony, it is intended that he shall waive it.

And in Shaeffer vs. Jack, 14 S. & R., 426, it was held that the remedy given by the Act of the 5th of March, 1795, upon a Sheriff's official bond, is not cumulative to the Act of the 27th of March, 1813, but precludes a proceeding under that Act. Duncan, J., says that it is analogous to the case under the Statute of 3 W. III., ch. II., in an action on debt on a penalty for the performance of covenants, where the statute provides that the plaintiff *may* assign his breaches and the jury shall assess damages for the breaches assigned.

The words of the Statute are "may assign or may suggest," yet this, after much discussion, was settled to be compulsory on the plaintiff, and that it was not in his power to refuse to proceed on this new regulation; and if he proceeds otherwise his judgment is erroneous.

And in Newburg Turnpike Co. vs. Miller, 5 John, Ch. R., 113, the Court held, referring to Lord Hardwick's opinion in Stamper vs. Miller, 3 Atk., 212, "That the words shall or may, when applied to private trusts, leave an election to the trustees, which is not the case when the words are used in an Act of Parliament. And in regard to statutes, the rule of construction seems to be, that the word *may* means *must* or *shall*, only

in cases where the public interest and right are concerned, and where the public or third persons have a claim *de jure*, that the power should be exercised."

As both the municipal corporation and the party injured may appeal, it is a clear case where not only the public interests are concerned, but where the injured party has a claim *de jure*, and therefore both the municipality and the party aggrieved must pursue the remedy given by the Act of 1874.

This exception is not sustained.

The fifth exception is that no notice was given to exceptant of the proceedings of viewers, and that he was not present at the meeting of the viewers. The 202nd section of the Rules of Court is that "Five days written or printed notice shall be given of the time of all road views to the owners or occupants of the land along the route of the proposed road, and the report shall state affirmatively that such notice has been given, in default of which the proceedings will be set aside."

The 203rd setion is that "In views for the assessment of damages done by the opening of roads, five days written or printed notice shall be given of the time of view to the parties responsible for such damages, and the report shall state affirmatively that such notice has been given, or it will be set aside."

While the 203rd section does not provide for notice to the owners of land in a proceeding for assessing damages, I take it that the 202nd section must be construed as applicable to all road views, whether for laying out roads or for assessing damages.

In the case before us the report does not state affirmatively that such notice was given as required by the 202nd section, and if a motion had been made alleging such omission, the proceedings would have been set aside.

But the exceptant did not pursue that mode, but filed exceptions that he had no notice. This compelled the borough authorities to submit proof of notice.

The rule of Court, however, requires that five days written or printed notice shall be given of the time of all road views to the owners or occupants of land along the route of the

proposed road, &c. The proof of notice given was by a printed notice conspicuously posted upon the premises of Yost, stating the time and place of meeting of the viewers appointed to assess damages.

This mode of proof is provided for by the 68th section of the Act of April 3, 1851, in case of a proceeding by a municipal corporation "to change the streets or in the grading or other regulation thereof." Was this notice sufficient? The property of M. L. Yost taken by the borough in widening Carpenter street is the narrow strip of land lying between Carpenter street and Osage street.

It is true Yost claims damages for entering Carpenter street over Osage street, on the ground that he has a title to the land occupied by the latter street, by deed from Hacker. But he got this title to the land after it was solemnly dedicated by Hacker by deed for public use as a highway, and also after it was accepted and adopted by the borough authorities as one of the public streets of said borough.

Yost only paid one dollar, and in his deed the right to use the said Osage street is reserved to Hacker and his heirs, and to the owners and occupants of others claiming title to the use of said street, through or under the said Hacker or his grantees. What right had Yost then on this land? Practically none. The only possible right he has is that Osage street might some day be vacated according to law, and the persons, in whose favor the reservation is in the deed to him, might release those rights to the use of said street, in which event the land would revert to Yost.

But this is so remotely contingent and is not such an interest on the land as to entitle Yost to damages for extending Carpenter street over Osage street.

The only land which was taken for which Yost is entitled to damages is the strip lying between Carpenter and Osage streets.

The rule requires that notice shall be given to the owner or occupant, and as Yost did not reside in the county, and there was no occupant on the land, and as the rule of Court does

not provide for such a contingency, we are of the opinion that the notice given in this case was necessarily sufficient.

In coming to this conclusion, I have some slight doubts as to its correctness, but as I was bound, as I understand the law, to overrule all the other exceptions, and if I committed any error the exceptant will have the opportunity to have the whole case considered by the proper tribunal.

And now, March 3, 1884, all the exceptions filed by M. L. Yost are overruled, and the report of viewers confirmed absolutely.

---

M. L. Yost then took a *certiorari* to the Supreme Court, complaining of want of notice and various irregularities.

*Robert L. Cope, Esq.*, for Yost, cited Frankstown Road, 26 Pa, 472 ; Boyer's Road, 37 Pa., 257 ; Act April 3, 1851, Sec. 2 P. L. 320 ; Osage Street, 90 Pa., 114 ; Bean's Road, 35 Pa., 280 ; Cambria Street, 75 Pa., 357 ; Thompson vs. White, 4 S. & R., 135 ; Reserve Township Road, 80 Pa., 165 ; Neeld's Road, 1 Pa., 355 ; Mercer Street, 1 W. N. C., 26 ; R. R. Co's Appeal, 102 Pa., 39 ; Road in Lancaster, 68 Pa., 396 ; Schuylkill County's Appeal, 38 Pa., 439.

*J. D. Brodhead and H. W. Scott, Esqs., contra*, cited, Road in Moore Twp., 17 Pa., 116 ; Allentown Road, 5 Wh. 442 ; Osage Street, 90 Pa , 114 ; Road in Bellevernon, 15 W. N. C., 232 ; Fretz's Appeal, 15 Pa., 297 ; Kirk's Appeal, 28 Pa., 185 ; Road in Middlecreek, 9 Pa., 69 ; McCall's Ferry Road, 13 S. & R., 25 ; Road in Springdale Twp., 91 Pa., 264 ; Turnpike Road, 5 Binney, 481 ; Peck's Appeal, 11 W. N. C., 31 ; Lower Merion Road, 18 Pa., 238.

The Supreme Court affirmed the judgment of the Quarter Sessions on March 16, 1885, in the following opinion,

PER CURIAM :

The purpose for which the viewers were appointed was the assessment of damages. They were not directed to change the location of the street, nor did they profess to do so. Their report shows that they did give notice of the time and place of their meeting. This presumes the notice was properly

given.  In the opinion of the Court on overruling the excep-
tions it is stated that Yost did not reside in the county, and
there was no occupant on the land ; but the printed notice
was posted conspicuously upon the premises.  It stated the
time and place of meeting of the viewers appointed to assess
damages.  Having no known agent in the county, we think
this notice was sufficient.  We see no sufficient reason for
disturbing the judgment.

Judgment affirmed.